UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

GREGORY WILLIAMS, JR.,

        Plaintiff,

v.

PETER SICES et al.,

        Defendants.
_____/

Case No. 1:22-cv-171

Honorable Jane M. Beckering

# OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Health Unit Manager Jody L. LeBarre, Nurse

Supervisor Amie Gaskill RN, and Deborah Jones RN in their official capacities. Plaintiff sues Dr. Peter Sices in his personal capacity.

In his amended complaint (ECF No. 12), Plaintiff states that he has permanent life-threatening blood clots and requires blood thinners. Plaintiff alleges that on November 10, 2021, he was taken off his blood thinner after Defendant Jones lied to Defendant Sices and told him that Plaintiff had been refusing his shots. Plaintiff kited health care on November 11–14, 19, 22, and 24–26, 2021, complaining of swelling in his left leg and the left side of his body. However, Plaintiff believes that Defendant Jones and other nurses refused to process his kites. Plaintiff states that he was denied blood thinners for a total of 24 days, from November 11, 2021 through December 3, 2021, and that during this time he suffered severe swelling to the left side of his body and to his left leg. On November 21, 2021, Plaintiff began to ask other inmates how long it should take to be called out for medical kites and was told that Defendant Jones and other nurses were known to refuse to process kites.

Plaintiff alleges that he spoke to Defendant Gaskill on November 11, 12, 13, and 19, and asked her about the kites. Defendant Gaskill indicated that she remembered Plaintiff's kites but believed that Plaintiff was lying about her co-workers failing to process the kites. Defendant Gaskill stated, "You can go to hell for all I care I put them in the trash myself without being processed." (ECF No. 12, PageID.11.) Plaintiff protested that it violated his rights and Defendant Gaskill responded that she did not care because the nurses were a family and she did not have to process anything.

On November 22, 2021, Plaintiff was given Policy Directive 03.04.100, which states that any prisoner who requests urgent healthcare shall be seen within five business days, and that a prisoner who makes the same healthcare request three times in a row shall be referred to an outside

physician. Plaintiff also asserts that the policy allows prisoners with a condition that is serious but not life-threatening to ask for assistance during rounds and to be treated as soon as possible. Plaintiff alleges that he sent numerous kites and spoke to at least one of the named Defendants every day from November 11, 2021 until December 3, 2021, regarding his symptoms and his need for a blood thinner. Plaintiff states that during this time period, Defendant Gaskill told him not to be surprised if he was never seen, and that she could not do anything to help Plaintiff and did not really care. Plaintiff states that Defendants LeBarre and Gaskill failed to review any of his medical kites, and that at one point, Defendant LeBarre told Plaintiff that she did not care and he should complain to someone who did care.

Plaintiff states that he wrote to Warden Davids (not a party) and asked him to intervene on Plaintiff's behalf, but that he did not receive a response. Plaintiff states that because of the denial of blood thinners for 24 days, he continues to suffer from swelling in his leg which limits his daily activities. Plaintiff asserts that Defendants denied him necessary medical care in violation of the Eighth Amendment. Plaintiff seeks compensatory and punitive damages as well as declaratory and injunctive relief.

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.     Official Capacity claims

Plaintiff sues Defendants LeBarre, Gaskill, and Jones solely in their official capacities. Plaintiff seeks compensatory damages in the amount of $200,000 from each defendant and punitive damages in the amount of $30,000 from each defendant. (Am. Compl., ECF No. 12, PageID.74.) In addition, Plaintiff asks the Court to declare that the acts and omissions he describes violated his constitutional rights. Finally, Plaintiff asks the Court to enter preliminary and permanent injunctive relief compelling Defendants "to fix the policy in which it allows healthcare

to stop delays also to allow Plaintiff to be seen by outside source/physical." (Compl., ECF No. 12, PageID.73.)

A suit against an individual in his official capacity is equivalent to a suit brought against the governmental entity: in this case, the Michigan Department of Corrections. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). Plaintiff may not maintain a § 1983 action against the MDOC. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994).

Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010). For that reason, an official-capacity defendant is absolutely immune from monetary damages. *Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998); *Wells v. Brown*, 891 F.2d 591, 592–93 (6th Cir. 1989). Therefore, the Court dismisses Plaintiff's damage claims against Defendants LeBarre, Gaskill, and Jones.

Even though a suit against an individual in his or her official capacity is equivalent to a suit brought against the governmental entity, and precludes a suit for damages, an official-capacity

action seeking injunctive relief constitutes an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). A suit under *Ex Parte Young* for prospective injunctive relief is not treated as an action against the state. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). Instead, the doctrine is a fiction recognizing that unconstitutional acts cannot have been authorized by the state and therefore cannot be considered done under the state's authority. *Id.*

"*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Plaintiff's request for injunctive relief fails at the outset because he does not allege an ongoing violation of federal law by Defendants LeBarre, Gaskill, or Jones. He complains of a 24-day period during November and early December 2021 where he alleges he was unconstitutionally denied his blood thinners. Plaintiff does not allege any ongoing deficiency in his medical care. Therefore, the Court dismisses Plaintiff's claims for injunctive relief against Defendants LeBarre, Gaskill, and Jones as well.

## B. Personal capacity claims against Defendant Sices

Plaintiff alleges that Defendant Sices violated the Eighth Amendment when he discontinued a prescribed blood thinner for a period of 24 days. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is

violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

Deliberate indifference may be manifested by a doctor's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05.

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g., Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's

7

claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842)).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (2014). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster*, 749 F.3d at 448; *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

9

Plaintiff states that he was denied his blood thinner for no apparent reason from November 11, 2021 through December 3, 2021. In support of his claims, Plaintiff attaches copies of kite responses to his amended complaint. A review of the record shows that on November 15, 2021, Plaintiff kited that the doctor had taken him off blood thinners and "lovenox" despite Plaintiff's life-threatening issue with blood clots. (ECF No. 12-1, PageID.96.) The kite was responded to by Defendant LeBarre, who stated:

> The risk of taking those blood thinning medications intermittently poses a great danger to you. The nursing staff has documented your refusal on several occasions and the medical provider has spoken with custody staff that confirm your refusal and watched the video footage which demonstrates that you did not take your medications as you insisted that you did. The Dr determined it is not safe to continue prescribing these drugs if you do not take them exactly as prescribed. This is at the prescribing Drs discretion to make this change.

(*Id.*)

On December 17, 2021, Plaintiff kited that Defendant Jones seemed to be skipping his cell during medication rounds and he wanted to know if he was still on blood thinners. Defendant Gaskill responded that she had checked his medication administration record, and that Plaintiff had been getting his medication every night. (*Id.*, PageID.97.)

On January 3, 2022, Plaintiff kited that his left leg had swollen up all the way down to his left ankle and was painful upon standing and walking. Plaintiff requested to be placed back on his Lovenox injections. (*Id.*, PageID.98.) Ruth Bartlett RN responded:

> Doctor is aware of your condition and the importance of maintaining a therapeutic blood level. Lovenox injections are given just to bridge until the oral medication Warfarin is holding your level. The Doctor may increase or decrease the Warfarin dose depending on your lab draws to keep your blood at a therapeutic level. Lovenox is not used as long term treatment for blood clots. Warfarin is.

(*Id.*).

It is clear that Plaintiff suffers from a serious medical condition that requires monitoring and treatment. Based on the attachments to Plaintiff's complaint, it appears as if the decision to

suspend his treatment with blood thinners for a 24-day period in 2021 was based on Plaintiff's repeated refusal to take his medication and the determination that intermittent treatment with blood thinners posed an increased risk to Plaintiff's health. The November 15, 2021 kite response indicates that Plaintiff's refusal to take his medications on a regular basis had been documented by nursing staff, and that the medical provider had spoken with custody staff who had watched video footage which showed Plaintiff refusing to take his medications. (*Id.*, PageID.96.) In addition, the record indicates that Plaintiff was receiving blood thinners in December 2021 and January 2022, and that his therapeutic blood level was being monitored. (*Id.*, PageID.97-98.)

Although Plaintiff claims he never refused his medications, he does not contest the representation that a person who intermittently takes blood thinners is endangering his health. Nor does Plaintiff contest that the representations that the nursing staff and custody staff told the doctor that Plaintiff was refusing his blood thinner medications. As that was the situation that confronted Dr. Sices, his decision to stop the Lovenox, the Warfarin, or both does not support an inference that Dr. Sices was deliberately indifferent. To the contrary, the facts alleged by Plaintiff suggest that Dr. Sices was anything but deliberately indifferent. Accordingly, Plaintiff's Eighth Amendment claim against Dr. Sices is properly dismissed.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:    August 22, 2022                      /s/ Jane M. Beckering
                                               Jane M. Beckering
                                               United States District Judge